James F. WEBER, Plaintiff and Appellant,

v.

FIRST FEDERAL BANK, A Federal Savings Bank of Beresford, South Dakota, and Its Directors Dean Lindstrom, Olga Carlson and C. Wayne Erickson, Defendants and Appellees.

No. 18569.

Supreme Court of South Dakota.

Considered on Briefs May 25, 1994.

Reassigned Sept. 2, 1994.

Decided Nov. 9, 1994.

Rick Johnson, Johnson, Eklund, Nicholson, Dougherty and Abourezk, Gregory, and Thomas J. Nicholson, Johnson, Eklund, Nicholson, Dougherty and Abourezk, Sioux Falls, for plaintiff and appellant.

John P. Blackburn and Laura R. Mitchell, Blackburn and Mitchell, Yankton, for defendants and appellees.

HENDERSON, Retired Justice (on reassignment).

### PROCEDURAL HISTORY/ISSUES

James F. Weber filed suit on January 13, 1993, against First Federal Bank of Beresford, South Dakota, alleging wrongful discharge, breach of implied contract, and deceit. By rationale in a September 30, 1993, Memorandum Opinion, the trial court granted an order of summary judgment on the same date in favor of First Federal. Trial court ruled that Weber's complaint did not

present any genuine issue of material fact because applicable federal law on employment relations at federally chartered banks preempted South Dakota law. Weber raises the following issues on appeal:

I. Was Weber's claim of deceit preempted by federal law?

II. Was the employment agreement between First Federal and Weber ultra vires and void?

III. Did the trial court err in determining that all of Weber's employment rights were preempted by federal banking provisions?

Whereas federal law does preempt South Dakota law on this matter, we affirm summary judgment.

## FACTS

First Federal is chartered as a federal mutual savings bank pursuant to Section 5 of the Home Owners' Loan Act of 1933 (HOLA), 12 U.S.C. § 1464 (1992). *See generally* 12 U.S.C. §§ 1461 *et seq.* (1992). HOLA provisions establish the Office of Thrift Supervision (OTS), establish its Director, and provide authority for the Director to prescribe regulations and issue orders as necessary for carrying out HOLA. *See* 12 U.S.C. § 1462a(b)(1)–(2); 12 C.F.R. §§ 500–599 (1989). These regulations provide for the organization, incorporation, examination, operation, and regulation of associations to be known as federal savings associations and banks, and encourage such institutions to safely and soundly provide credit for housing. 12 U.S.C. § 1464(a)(1).

Federal mutual savings banks are required to "operate under bylaws that contain provisions that comply with all requirements specified by the OTS." 12 C.F.R. § 544.5(a). Certain regulations list the powers of the board of directors of an association, including the power to fix the compensation of officers and employees, remove any officer or employee at any time with or without cause, and enter into and terminate employment contracts. 12 C.F.R. §§ 544.5(b)(11)(ii), 563.39(a)–(b).

Weber served as CEO and president of First Federal. Both he and his wife, Yula, were members of the five-member Board of Directors (Board) of First Federal. After the other three members sought his resignation, Weber left on August 14, 1992, on the condition that he be named manager of the First Federal branch in Yankton, South Dakota at $60,000 annually plus benefits. On September 25, 1992, those same three Board members terminated him as branch manager for cause due to violating policies and regulations on loan files, incompatibility with other employees, and requesting a co-employee to falsify the amount on an appraisal. Weber maintains this termination violated both the August 14 agreement and the termination procedure required by First Federal's employment manual. He sought remedy under South Dakota law. Citing federal preemption, the trial court held that Weber could not bring an action against First Federal under state law. Weber appeals.

## DECISION

*Federal banking law preempts state law on Weber's claim.*

■■■ In reviewing a grant of summary judgment, we must determine if the moving party demonstrated the absence of any genuine issue of material fact and established entitlement to any judgment on the merits as a matter of law. The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party. The nonmoving party, however, must present specific facts showing that a genuine, material issue for trial exists. Our task on appeal is to determine only if a genuine issue of material fact exists and if the law was correctly applied. *Waddell v. Dewey County Bank,* 471 N.W.2d 591, 593 (S.D.1991); *Wilson v. Great Northern Ry. Co.,* 83 S.D. 207, 212, 157 N.W.2d 19, 21 (1968). Where no genuine issues of material fact exist and the trial court resolves the questions of law in a party's favor, summary judgment is appropriate. *King v. John Hancock Mut. Life Ins.,* 500 N.W.2d 619 (S.D. 1993).

■■■ First Federal received the benefits of summary judgment because the trial court ruled that federal law preempted Weber from seeking damages under South Dakota

law. Apparently, there are two different possible lines of authority on this matter: (1) our previous decision in *Blote v. First Federal Sav. & Loan Ass'n*, 422 N.W.2d 834 (S.D. 1988), and federal law; and (2) three cases from Wyoming, New Jersey and California addressing HOLA.

*Blote* held that state law was preempted by the Federal Home Loan Bank Act. Federal supremacy reigns true again with HOLA. Under various subsections of 12 C.F.R. § 544.5, federal savings associations, such as First Federal Bank of Beresford, are required to operate under and comply with the requirements of the OTS, which is responsible for the administration and enforcement of HOLA. According to 12 C.F.R. § 545.2:

> The regulations in this part *545* are promulgated pursuant to the plenary and exclusive authority of the Office [of Thrift Supervision] to regulate all aspects of operations of Federal savings associations, as set forth in Section 5(a) of the Act. *This exercise of the Office's authority is preemptive of any state law purporting to address the subject of the operations of a Federal savings association.* (Emphasis added.)

Such explicit language is pertinent when considering 12 C.F.R. § 545.122: "A Federal savings association, upon specific approval of its board of directors, may enter into employment contracts with its officers and other employees *in accordance with § 563.39* of this chapter." (Emphasis added.) § 563.39, in turn, authorizes officers and employees to be terminated at-will and for cause. Thus, § 12 C.F.R. 545.2, which applies to First Federal, results in preemption.

Because First Federal was established under Federal regulations other than HOLA, Weber asserts *Blote* is inapplicable and cites three wrongful termination cases which interpreted HOLA and applied 12 C.F.R. § 563.39. *See Hall v. Great Western Bank*, 231 Cal.App.3d 713, 282 Cal.Rptr. 640 (1991); *Cole v. Carteret Savings Bank*, 224 N.J.Super. 446, 540 A.2d 923 (1988); and *Dynan v. Rocky Mountain Federal Savings & Loan*, 792 P.2d 631 (Wyo.1990). These courts held that the language of the regulation did not

mandate federal preemption of state law wrongful termination claims.

We are not persuaded by these cases. As outlined above, there is a simpler path to follow. 12 C.F.R. § 545.2 exercises preemptive authority and incorporates § 563.39 (the termination provision in dispute), via § 545.122. Application of state law to this alleged wrongful termination is preempted. Furthermore, federal supremacy in this matter is apparent under other federal authorities. *See* 12 U.S.C. 1464(d) and 12 C.F.R. §§ 508, 544.5(b)(11). *Blote* and applicable federal laws outweigh the interpretations of foreign courts. Hence, the arguments behind Weber's claims of wrongful termination were not material to the trial court's grant of summary judgment. First Federal prevails as a matter of law. *Blote*, 422 N.W.2d at 837.

Affirmed.

MILLER, C.J. and AMUNDSON, J., concur.

SABERS, J., concurs in result.

WUEST, J., dissents.

KONENKAMP, J., not having been a member of the Court at the time this case was submitted, did not participate.

SABERS, Justice (concurring in result).

First Federal Bank claims a cease and desist order was issued against Weber under Federal Law by the Office of Thrift Supervision. First Federal Bank further claims that under Federal Law the report of examination prohibits disclosure or release of the supporting documentation. In other words, the state court cannot see the real reasons for Weber's termination. First Federal Bank is attempting to take advantage of its own "self-proclaimed" secrets. I will have no part of that argument and suggest the whole case should be kicked back to Federal Court to sort out its own rules.

WUEST, Justice (dissenting)

Because I believe federal law does not preempt the issue in this case, I would reverse and remand to the circuit court.

There are two lines of cases that appear to have applicability to the present question. However, one line (which includes cases relied upon by the circuit court) is clearly distinguishable from other case authority that is directly on point. A case from the Ninth Circuit court of appeals is representative of this first line of cases, which shall be referred to as the *"at pleasure"* cases. *See Inglis v. Feinerman,* 701 F.2d 97 (9th Cir. 1983). *It is important to note that none of these "at pleasure" cases apply or interpret the Home Owners' Loan Act (HOLA) or the language in the regulations promulgated pursuant to the authority of HOLA.* In *Inglis,* an employee of a Federal Home Loan Bank (Bank) brought an action for wrongful discharge, alleging that the Bank failed to hold a disciplinary hearing prior to his termination as provided in the personnel manual. 701 F.2d at 98. Summary judgment was granted for the Bank and the employee appealed. *Id.* In upholding the summary judgment, the court noted that the Bank was created by the Federal Home Loan Bank Act, 12 U.S.C. § 1421; and further noted that 12 U.S.C. § 1432(a) provides in pertinent part that the bank "shall have the power to ... *dismiss at pleasure*" its officers and employees. 701 F.2d at 98 (quoting 12 U.S.C. § 1432(a) (emphasis added)). The *Inglis* court also relied on a similar Ninth Circuit case that construed language of the Federal Reserve Act, 12 U.S.C. § 341 which "gives Federal Reserve Banks the power to '*dismiss at pleasure* such officers or employees.'" *Bollow v. Federal Reserve Bank of San Francisco,* 650 F.2d 1093 (9th Cir.1981) (quoting 12 U.S.C. § 341) (emphasis added). Interpreting this "at pleasure" language as found in 12 U.S.C. § 1432(a), the court held that "attempts to create employment rights from independent sources such as the employment manual are void under the Federal Home Loan Bank Act." *Inglis,* 701 F.2d at 99.

Two other more recent cases, not cited by the circuit court, also interpret the "at pleasure" language of the Federal Home Loan Bank Act. *See Andrews v. Federal Home Loan Bank of Atlanta,* 998 F.2d 214 (4th Cir.1993); *Kispert v. Federal Home Loan Bank of Cincinnati,* 778 F.Supp. 950 (S.D.Ohio 1991). Both of these cases interpret the 12 U.S.C. § 1432(a) "dismiss at pleasure" language and follow the holding that this statute preempts state law wrongful termination claims. *Andrews,* 998 F.2d at 220; *Kispert,* 778 F.Supp. at 953. *But see Kispert,* 778 F.Supp. at 953 (noting the very specific pretermination employee rights set out in the employee manual, and stating that the "officers of that Bank certainly have a moral obligation to either comply with their own stated procedures or eliminate those false assurances from their publications.").

The circuit court's memorandum opinion cites this court's decision in *Blote v. First Federal Savings & Loan Ass'n,* 422 N.W.2d 834 (S.D.1988). In *Blote,* this court quoted the "at pleasure" language of 12 U.S.C. § 1432(a) and stated that this language preempts state law claims. 422 N.W.2d at 837–38 (quoting 12 U.S.C. § 1432(a) and citing *Inglis,* 701 F.2d at 98–99). In *Blote,* this court stated in part:

> [C]onsidering Federal's birth and life via federal charter under the auspices of the Federal Home Loan Bank Board, we note the decision of *Inglis v. Feinerman,* 701 F.2d 97 (9th Cir.1983), *cert. denied,* 464 U.S. 1040, 104 S.Ct. 703, 79 L.Ed.2d 168 (1984), with its core holding that attempts to create employment rights from independent sources such as personnel manuals are void under the Federal Home Loan Bank Act (12 U.S.C. § 1421, et seq.), which authorizes dismissal of bank officers "at pleasure" of the bank (12 U.S.C. § 1432(a)) and preempts state laws.

422 N.W.2d at 837–38. It is vital to note that the employer in *Blote* was an institution created via the Federal Home Loan Bank Act. As previously noted in *Inglis,* the "at pleasure" language of that Act has been interpreted to preempt state law wrongful termination claims. 701 F.2d at 99. *See Bollow,* 650 F.2d at 1097 (interpreting "at pleasure" language of Federal Reserve Act, 12 U.S.C. § 341). Thus, *Blote* followed the majority of other jurisdictions interpreting "at pleasure" language in federal banking acts, was correctly decided and remains good law. *Nothing in this dissent should be in any way construed as disturbing this court's previous*

*holding in Blote.* However, the employer in the present case, First Federal, is *not* an institution established pursuant to the Federal Home Loan Bank Act as was the case in *Blote.* Thus, the "at pleasure" language of 12 U.S.C. § 1432(a) is not applicable here.

The second line of cases, that is directly on point, shall be referred to as the *"for cause"* cases. *See Hall v. Great Western Bank*, 231 Cal.App.3d 713, 282 Cal.Rptr. 640 (1991); *Cole v. Carteret Savings Bank*, 224 N.J.Super. 446, 540 A.2d 923 (1988); *see also Dynan v. Rocky Mountain Federal Savings & Loan*, 792 P.2d 631 (Wyo.1990). These cases involve wrongful termination actions brought against employers, all of which are financial institutions chartered under the authority of HOLA—the same source of authority under which First Federal is chartered. In all three of these cases, the courts interpreted HOLA, and specifically applied the language of 12 C.F.R. § 563.39, which provides, in pertinent part:

> A savings association may enter into an employment contract with its officers and other employees only in accordance with the requirements of this section. All employment contracts shall be in writing and shall be approved specifically by an association's board of directors.... Each employment contract shall provide that: (1) The association's board of directors may terminate the officer or employee's employment at any time, but any termination by the association's board of directors other than termination for cause, shall not prejudice the officer or employee's right to compensation or other benefits under the contract.

12 C.F.R. § 563.39(a)–(b). *All three courts held that the language of the regulation did not mandate federal preemption of state law wrongful termination claims.*

In *Cole,* a mid-level manager employee brought a wrongful termination suit against his former employer. 540 A.2d at 923. The employer (a HOLA-chartered institution) had an employee manual that contained pretermination procedures with which the employer failed to comply. *Id.* at 924. The employer argued the regulation found at 12 C.F.R. § 563.39 "preempted the whole area of em-

ployee rights as to member institutions" including any contract rights implied via the employee manual. *Id.* The *Cole* court noted that "HOLA and its board's regulations did not have unlimited preemptive power over state law[.]" *Id.* (citing *Fidelity Federal Savings & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 167, 102 S.Ct. 3014, 3030, 73 L.Ed.2d 664, 684 (1982)). The court reviewed the language of the regulation, and summarized its meaning that "a savings and loan *may* have employment contracts and *if so* they shall be in writing, specifically approved by a member's board of directors and include the language of 12 C.F.R. § 563.39(b)(1), which language is clearly protective of employees who are fired without cause." 540 A.2d at 925 (emphasis added). The employer argued that although the manual was in writing, and uniformly distributed to all employees, it was not the "writing" contemplated by the language of the regulation. *Id.* In fact, only ten top level managers had written contracts with the employer, all containing the regulatory language. *Id.* In reaching its decision, the court distinguished *Berry v. American Federal Savings,* 730 P.2d 905 (Colo.App.1986), which is a case relied upon by the circuit court in the present matter. The court stated:

> Indeed, Berry based his claim on such an employee manual. The [Colorado] court held that regulation 563.39 did preempt the application of the state case law and dismissed the suit. The authority relied on by the *Berry* Court was a Ninth Circuit decision, *Inglis v. Feinerman,* 701 F.2d 97 (9th Cir.1983). However, a reading of *Inglis* shows that the institution there was a home loan bank subject to the Home Loan Bank Act, 12 U.S.C.A. §§ 1421 *et seq., not the HOLA under which defendant operates.* The Home Loan Bank Act, unlike HOLA, and the regulation herein, has a section that specifically permits home loan banks to terminate employees at will. *See* § 1432(a).... However, HOLA not only is devoid of any authorization to fire at will, *but the very regulation in question, 12 C.F.R. § 563.39, indicates a clear concern for employee rights.* Thus one can see an expression of policy by Congress with regard to home loan banks of afford-

ing no protection to employees, while the bank board by regulation apparently determined to afford protection to employees of federal savings and loans fired without cause. The court therefore respectfully declines to follow the holding in *Berry, supra.*

*Cole,* 540 A.2d at 925–26 (second emphasis added). Thus, the facts and holdings of *Inglis,* 701 F.2d 97, *Berry,* 730 P.2d 905, and *Blote,* 422 N.W.2d 834—the three main cases relied upon in the circuit court's memorandum opinion—are all materially distinguishable from the facts of the case at bar since First Federal is chartered under HOLA, not under the Federal Home Loan Bank Act. The *Cole* court continued:

> It seems unlikely that the presence of said regulation [12 C.F.R. 563.39] amounts to an intent by the board to preempt federal savings and loans from the thrust of state law that affords protection to the employees of such institutions. An analysis of HOLA and the board's regulations implementing it fails to reveal any intent to bar state established protection for such employees.... The court is satisfied and concludes that regulation § 563.39 is simply an expression of policy instructing member institutions that if they do contract formally with certain employees, that it must be in writing, authorized by its Board, *etc., etc. There is nothing to even suggest that the board intended that the vast number of employees who have no formal contracts with such institutions be precluded from claiming a reliance on a work manual which outlines specific steps for performance related terminations....* [T]he applicability of the [contract implied by employee manual] doctrine is not an obstacle to the accomplishment and execution of the purposes of the HOLA[.]

540 A.2d at 926 (emphasis added).

*Cole* is cited with approval in *Hall,* 282 Cal.Rptr. at 643–45. The *Hall* court noted that the court in *Cole* recognized "the difference between the federal law which was the subject of *[Inglis],* in which the institution was subject to the [Federal] Home Loan Bank Act rather than the Home Owner's Loan Act [HOLA] which controls in the case before us." *Hall,* 282 Cal.Rptr. at 645) (citing *Cole,* 540 A.2d at 925–26). The court also distinguished *Inglis,* 701 F.2d at 98 (as well as *Bollow,* 650 F.2d at 1097, the case relied on in *Inglis*) noting that both cases shared a "major distinction from the one before us" in that the applicable federal law "allowed dismissal of an employee 'at pleasure.'" *Hall,* 282 Cal.Rptr. at 644. The court dismissed as not persuasive authority any cases construing the "at pleasure" language stating: "Respondent [Bank] cites several other cases from other jurisdictions in which the reviewing court was concerned with 'at pleasure' language. We need not and do not discuss each separately." *Id.* at 645 n. 8. *See also Dynan,* 792 P.2d at 638 (applying 12 C.F.R. § 563.39, and stating that the regulations "do not serve to demonstrate that a termination without cause can be effected without liability in the usual context of the rights of an employer in an employment at will.... The question is not whether [the employee] can be terminated at any time, but whether, if he is terminated, there is no financial liability on the part of the [employer].").

I dissent from the majority opinion and would follow the reasoning expressed in *Cole* and *Hall,* and hold that the regulations promulgated under HOLA do not preempt Weber's state law claims stemming from his alleged wrongful termination. This holding follows the decisions of the majority of jurisdictions that have interpreted HOLA and regulations promulgated thereunder. I reiterate that *Blote* correctly followed decisions of the majority of jurisdictions that interpreted language from a *distinctly separate and different* federal banking act (Federal Home Loan Bank Act) and nothing in this dissent disturbs this court's decision in *Blote.**

---

* I note Justice Sabers' statement in his dissent in *Blote:*

> I am not persuaded by the majority's claim that attempts to create employment rights from independent sources such as personnel manu-

als are void under the Federal Home Loan Bank Act or that such law preempts state law. 422 N.W.2d at 840 n. 1 (Sabers, J., dissenting). As outlined in my dissent, it does appear that a majority of courts interpreting the Federal Home Loan Bank Act have held that said Act preempts

This court has held that employment contracts may be implied from employment handbooks. *See Osterkamp v. Alkota,* 332 N.W.2d 275 (S.D.1983); *Bauer v. American Freight Systems, Inc.,* 422 N.W.2d 435 (S.D. 1988); *Butterfield v. Citibank of South Dakota, N.A.,* 437 N.W.2d 857 (S.D.1989). *See generally* Jane Wipf Pfeifle and Steven J. Helmers, *The Evolving Boundaries of the At–Will Employment Doctrine in South Dakota: Defining the Need for Broader Exceptions,* 38 S.D.L.Rev. 273, 275–85 nn. 10–88 (1993) (discussing the evolution of the employee handbook exception to South Dakota's employment at-will doctrine). However, the

merits of this issue as well as Weber's other claims were not reached by the circuit court, as the motion and grant of summary judgment was based *solely on a federal preemption argument.* Thus, I would reverse and remand to the circuit court for further proceedings.

---

state-based employment law claims. Conversely, my review of cases from other jurisdictions reveals that a majority of courts have determined

that HOLA—the federal banking act applicable in this case—*does not preempt* state-based employment law claims.